The third case in our docket this morning is 23-30466, Trahant v. Official Committee of Unsecured Creditors. Good morning, Your Honors, Paul Sterbko for Richard Trahant. We're here this morning to review a process through which Mr. Trahant was found guilty of contempt, bad faith, and ultimately fined $400,000 for these alleged transgressions. The Court reviews this de novo and focuses on the actions of the Bankruptcy Court. By way of background and specifically with respect to due process, events occurred in early January, late February, excuse me, late December of 21, early January 22, where information leaked about a potential sexual predator on a high school campus in New Orleans. Mr. Trahant's involvement up to that point had been for years representing victims of clergy abuse and an appointment to the Unsecured Creditors Committee for the bankruptcy of the Archdiocese. He recognized the name, googled the name, found that this person was at Brother Martin High School and contacted his cousin, the head of school, and alerted him to this person's presence. He also sent one email to a local reporter and then later, much later on January 18th, and the date is significant, spoke to the reporter about Paul Hart. The investigation that we'll get into in a minute, importantly, did what the investigators ultimately found was that the two texts that Mr. Trahant sent to the head of school impliedly referenced a problem with Priest Hart and his history of sexual abuse. The January 3 email and the January 18 telephone call to the reporter allegedly went a little further and they discussed potential problems with Paul Hart because of his history of sexual abuse. At no time has anyone ever determined, nor has it ever been alleged, that Mr. Trahant divulged documents, produced documents, read documents, or read anything or talked about any specific information from the prior investigatory report on this particular priest. And so against that background, on January 20, the debtor, the Archdiocese, files a motion for an evidentiary, they want discovery and ultimately want an evidentiary hearing. That motion is then followed by four sealed, secret status conferences. Mr. Trahant is specifically sequestered and not allowed to attend any. He asks through a co-counsel, Mr. Gisselsen, by email, can we attend the January 27 status conference? The court says no. He then files a motion and asks to participate in discovery. The court never rules on the motion. He then specifically asks again to participate in a third conference, is not allowed to do so. Finally, on April 13, he files a declaration that is in the record where Mr. Trahant lays out exactly what he did. He's never hidden anything from anyone. He's never subverted anyone's questions. He's never pretended that none of this happened. To the contrary, for the period from January 27 through April 13, he begged the court to allow him to come forward and say exactly what he did and to tell the court exactly why he did it. He was not afforded the opportunity to do that ever. About a week later, on the 25th of April, after his declaration, the court charges the The investigation, like the status conferences and like everything that had gone on to that point, was secret, was sealed, was kept from Mr. Trahant. Indeed, Mr. Trahant wasn't even allowed to read his own deposition before it was submitted as part of the support for the UST report. So we reach June 7th, the court issues its first order, and it finds Mr. Trahant guilty of contempt, of bad faith, of multiple knowing and willful violations of a protective order. And to this point, from January 20 to June 7, Mr. Trahant has not had the opportunity to participate in any manner whatsoever in this proceeding. The June 7 order, with respect, constitutes a final judgment. He is clearly found guilty of contempt, and he's clearly sanctioned. He's sanctioned because he's thrown off of the unsecured creditor committee. Unfortunately, his clients are also thrown off the committee. But most importantly, for due process purposes, he has now been deprived of his good name and his reputation in the community because the order was served on over 16,300 people. He immediately began getting feedback as to what was going on, what happened. So this clearly has had, did have, and will continue to have an effect on his otherwise perfect, sterling professional reputation as a trial lawyer in this community for over 30 years. With due respect, our position is very simple. An objective review of that proceeding reveals that notice and the opportunity to be heard were both due Mr. Trahant and absolutely 100 percent denied Mr. Trahant. And he was then, his due process right was violated, and it resulted in the harm I just described. Counsel, I understand the harm. I'm following you well. What is your best authority for the idea, though, that that order was a final appealable order? Because the notion that it imposed real consequences on your client, and I don't in any way mean to minimize those. I understand what you're saying. I'm just, that's not the standard that at least we apply or the Supreme Court of the United States applies. So maybe there's a different rule when it comes to bankruptcy that I'm not aware of. No, Your Honor, what we are relying on is the fact that the order took away, it severely impacted his 14th Amendment right to his good name and his integrity and his honor. And I'm completely with you, and I totally understand what you're saying. But the Supreme Court of the United States has said that in a civil case, disqualification of counsel is not appealable under the collateral order doctrine. So I'm trying to figure out what we do with that rule as it applies to your case, because obviously if it doesn't, if it's not final and appealable, then your notice of appeal doesn't divest the Bankruptcy Court of Jurisdiction to proceed on with the proceedings. So that's what I'm, I'm just asking you, can you help me understand why you say it's final and appealable, you say it has serious consequences. I'm with you on the second point. I'm trying to understand the first point. Well, let me, I want to make sure I understand you. Sure, sure, please. Is the question divesting him from the committee itself a sanction that would rise to the level of our argument that he's been deprived of due process? Sorry, no, I'm with you on that. I hear what you're saying. What I'm asking is, when the bankruptcy judge disqualifies your client from the committee, that looks like a disqualification order, which happens with some regularity in Federal practice, unfortunately. The Supreme Court of the United States has said you cannot appeal that, even though it's bad and even though it has consequences and whatever, you have to wait and appeal it later. And what I'm asking is, is there some special rule in bankruptcy that I'm unaware of, or would we use the general civil rule and say, at the moment you filed your notice of appeal to the district court from that bankruptcy judge decision, that was premature? No, Your Honor, our position is it's not his removal. I mentioned his removal because it clearly is a consequence. What triggers the right to appeal here is the fact that he has now lost, or his 14th amendment right, as it's interpreted by the Supreme Court, has clearly been violated by the service of this order on more than 16,000 people. It's our position that at that point, this becomes a final judgment that has caused him significant harm, and at that point, his right to appeal, there's no interlocutory issue here. He has got a right to appeal, a final judgment that has cast him guilty and caused him the requisite harm, constitutional harm, for him to move to the next step. And to touch on your point, Your Honor, it is our position, as we said in the brief, that once that appeal was lodged, and I believe Judge Guidry agreed with us that it was a final judgment because there was an effort to dismiss the appeal on prematurity grounds that he denied. But in any event, once that appeal is lodged, our position is the bankruptcy court is divested of jurisdiction, everything should have stopped, and the issues that I just recited should have been adjudicated finally, and then we go back, whatever the consequences, we go back and we deal with that. That didn't happen. What happened after that is a rule of show cause was scheduled on August 22nd, wherein Mr. Trahant testified, wherein the debtor had the opportunity to then create an evidentiary record because it was the only, and still is the only, rule of show cause that has been held in this entire contempt proceeding, and the only competent evidence that came out of that, to the extent that the court was even empowered by jurisdiction to do this, was Mr. Trahant's testimony and the colloquy that went back and forth between him and the court. The UST report was never introduced into evidence. The bills upon which the fine were assessed were never introduced into evidence. There's no affidavits, there's no declarations, and there's no, at least none that we can discern, effort to determine which of those bills specifically were incurred as a result of the finding that Mr. Trahant did something wrong, which we obviously disagree with, versus looking for others, because the UST specifically concluded that Mr. Trahant did not violate the protective order with respect to providing documents to the media, which was really the gravamen of this whole thing, and they left it open by saying there are multiple potential violators and we don't know who did it. Now, is Mr. Trahant paying for that? We don't know, because the bills weren't introduced into evidence, there was no opportunity to oppose them or traverse them, they just went in, they were considered, and out came the October 11 order assessing the fines. Counsel, in the June 7th order, the court found that your client had violated a protective order, and in the October 11 order, it assessed attorney's fees citing, initially, Rule 37. Even if we assume that you are correct for purposes of the contempt finding, doesn't this still stand based on Rule 37, which doesn't require a finding of bad faith or willfulness? Well, we say no, Your Honor, because on its face, Rule 37 requires a motion of a party. Motion of a party for order compelling disclosure or discovery, but that's not what we have here. What we have here is a violation of a protective order. Correct. And our position, Judge, is that while Rule 37 is cited, it is clear from the record going back from the beginning, and particularly, and I want to point this out because this is important, we were not, or Mr. Trahant was not permitted to see any transcripts from that series of status conferences until after the, at minimum, after the August 22nd rule to show cause. So we had no idea what had gone on. A review of all of those transcripts reveal that from the beginning, it was clear that Mr. Trahant was the target of this inquiry. There can be no doubt about that if one objectively reads the colloquy that went back and forth between the court and the debtor's attorneys and the UST. And so our position is simply that the court factually and legally used its inherent powers. While it cites Rule 37, it is clear that this court used its inherent powers to find Mr. Trahant guilty of not only contempt, but bad faith behavior and award sanctions based on the alleged bad faith behavior. And the problem, as we see it, Your Honors, with all due respect, is that when the inherent powers of the court are invoked, it's a very, very high standard. And at the August 22 hearing, the court itself specifically told Mr. Trahant, and this is in the transcript, you had a good reason for doing what you did. You were trying to protect high school students. So it's confounding and confusing on the one hand for a court to issue orders that essentially punish him for bad faith behavior, but on the other hand, tell him in open court that he had a good reason for everything that he did. Sometimes things are morally good, but they're not sanctioned by law. I mean, they go contrary to what your obligations are. Agree, Your Honor, 100 percent. And our position on that is that that obviates any bad faith on Mr. Trahant's part, and bad faith is required. I don't see – I just – here's my problem. I think I have the moral obligation to disclose something I find out about someone to protect them. But the court has said unequivocally, you are under a protective order, you cannot violate that protective order. I do it knowingly. I may have good intentions, but I do it knowingly. To me, that's an intentional, knowing violation of the order. I don't know if you call it bad faith or what, but it's certainly a knowing action. Well, the action – You violate the order. The action in this case, Your Honor – and at the end of the day – and I didn't get to this and my time is out – our position is that there was no protective order violation because what Mr. Trahant did – and he was very careful if you read what he said and what he did – Your briefs cover all that. He's very careful when he communicates to say, I'm constrained by a protective order. I can't do this. I can't do that. I can't reveal this. I can't reveal that. I'm giving you a name, and I want you to watch out for this guy. Yeah, put him on your radar. Something to that effect. Now, our position is that if you marry that with the – Where did he have access to that name other than from documents or information that was the subject of the protective order? The access to the name itself came from – No, linking the name to something criminal. Well, he didn't link any name. Linking the name to any information that he should be on your radar screen. The priest's name itself came to him from the report, from the – I forget, ABS or ASB, whatever it's called – report. But in Mr. Trahant – so now, as you point out, Mr. Trahant is in an untenable position, a terrible position, a position I wouldn't want to be in. He knows that this person is on – is actively on a high school campus as a chaplain, and he also knows that he is constrained by his obligations as an officer of the court. Why didn't he go to the bankruptcy court and say, okay, I want dispensation, or I want you to at least release this? Or instead, he took it upon himself to release the information. What he did was he took the most reasonable action he thought he could take under the then-existing circumstances, because the procedure to undo the protective order restrictions in the bankruptcy court were going to take too long at the end of the day. The reality is, he now knows that there is a potential problem that can happen tomorrow, and he's got to do something about this. Go to the judge. At the point in time when these decisions were being made, Your Honor, Mr. Trahant did not believe, and still doesn't believe – and now, having reviewed all of this and how this process worked, I don't believe that going to the judge was going to provide the children with the protection that they needed, the immediate protection that they needed. That was the reason – unfortunately, it didn't happen until January 4th – but that the creditor committee counsel wrote a very detailed letter to the debtor laying out everything in the report that Mr. Trahant had never shared with anybody in a very detailed letter and demanded that the priest be removed from the school, and he ultimately was. Could Mr. Trahant have written a similar letter? I don't know that he could have, Your Honor. I think a letter like that may have gotten him into the same boat that he's in right now, simply because of the way – looking at this from 10,000 feet – from the way this entire thing was handled once it became clear that public information came out about this priest. I guess it's easy to armchair quarterback this or to look at it in hindsight, but again, I'll go back to where I started. He's faced with a horribly untenable situation, and what Mr. Trahant tried to do and was willing to tell anyone who would listen is that he tried his best to balance the need to protect these kids and his obligations to the court under the protective order. Thank you, Your Honors. May it please the Court, my name is Mark Mentz. I represent the Roman Catholic Church, the Archdiocese of New Orleans, or the debtor in this matter. I'm joined at counsel's table by Samantha Oppenheim and Patrick Vance. Your Honors, I think we need to reframe the issue so that we all have a clear understanding of exactly what happened. Let's first start with where we are. Mr. Sterbko started with an argument that this is all review de novo. That unfortunately is not true. The legal conclusions are review de novo. The factual determinations are reviewed for clear error. And that's an important point. The factual determinations, as Judge Richmond, I think you said, are the clear understanding of what actually happened, which is that the attorney, Mr. Trahant, intentionally and willfully disclosed confidential information in violation of the bankruptcy court order. He concealed that for months. This concept that he tried to tell people is simply absurd. He eventually told everyone what happened, as he has said and as was found, by filing an affidavit into the record in which he admitted it. There was nothing that prevented him from doing that in any of the points from January to April when he filed that. It came after discovery to the school that we talked about, in which the school identified that he was the source of the information. So... Counsel, can I ask you a standard of review question? Yes. Because we see this in other cases. We obviously deal with all kinds of different circumstances where we have to review factual findings for clear error. And the premise behind why we do that is that we're sitting here with a cold record. We don't... We're not sitting in the district court. We don't have witnesses in front of us. We're not having hearings. But one of his biggest contentions in this case is, like, he didn't really get to participate. This was all done without him there, without any witnesses, without... I mean, that's the whole thrust of his due process argument. And so, in that sense, aren't we in exactly the same position that a district court would be in just adjudicating this on paper? I mean, we have the same record in front of us that the bankruptcy judge had. You do have the same record that the district court had, of course. You do not have the same record as the bankruptcy court insofar as the bankruptcy court did hold an order to show cause hearing at which Mr. Trahant testified. But that was after the... Well, that was after the June 7th order. That was, of course... So, and I think, Your Honor, it premises, you know, what we keep hearing a lot. And you know, Your Honor, you and I were here a couple of months ago on this exact issue, which is, is that June 7th order a sanction? And we heard a couple of things that are interesting here. Number one, Mr. Trahant is not on the committee and has never been on the committee himself. He has represented people who were on the committee, as is the subject of a previous appeal and another appeal that is in front of here. And while Mr. Judge Oldham is smiling because I argued it in front of him a couple of months ago, that issue of whether they have a protected right to be on that committee is an issue that is sitting before this court already. But it is our position, and it remains, we think, consistent with law, that there is no protected right to sit on that committee, and even more so, there is no ability to reverse it from a court and reappoint someone to a committee. That is something that is left to the sole discretion of the United States trustee. Second, so Mr. Trahant's, you know, idea, therefore, is, well, right. I wasn't removed from the committee. My clients were, and they didn't have a protected right to be there. So the only other harm that could have happened, he talks about, is this protected information regarding his reputation. We're going to get to that in a second, but, you know, you asked for a case, Judge Oldham, on is there something specific about bankruptcy, and the answer is no. There is nothing specific about bankruptcy that makes this any different. The U.S. abatement case is the case that says, specifically, there is nothing in bankruptcy that changes this concept that we look at a final order when the sanction is entered. And so to buy Mr. Trahant's argument, you have to buy the argument that June 7th was a final sanction. Judge Ash, in his opinion, made very clear it wasn't. In the reconsideration that Mr. Trahant asked for of the order, Judge Ash reexamined that portion of the order, of the denial of the motion to dismiss the appeal, and said, that was probably an error. I don't think it made any difference at that point. It was consolidated, but I don't think it made any difference. So then you move on to the reputational harm argument. And the thing about the reputational harm argument is the Supreme Court is not as clear as Mr. Trahant would have you believe as to what this reputational harm, or where it is. So he cited, you know, the Wisconsin case, he cited Regents v. Roth, and they say what they say. But later, in Paul v. Davis, the Supreme Court tells us that reputation alone, apart from some tangible interest such as employment, is not by itself sufficient to invoke procedural protection of the Due Process Clause. And I think this is what Your Honor was getting at when it also comes to where we are in disqualification. Now I bristle a little bit because disqualification is not really what happened. He wasn't disqualified from representing anybody. He still represents these clients. The four individuals who were removed from the committee, he still represents them. The 60 or 70 other ones, I haven't lost count, he still represents them. He is still there. He however, took it upon himself to look at this body of information that he got in order to say that this information needed to get out quickly. I have to get this out. I heard some disturbing things disparaging what the bankruptcy court could or wouldn't do. And it gets back to the fact of the matter that if we really thought there was a problem and that the debtor and the court needed to act, all you have to do is pick up the phone and call. This concept of the same thing would have happened. First of all, we don't know because he didn't do it. But second, and really more to the point, as soon as we were told, as soon as the Archdiocese was told, action began. We went through a series of matters. We went to the court pretty quickly. We moved quickly when asked to share information that needed to be shared. We did. But it was all done under the supervision of the court. And so in that sense, this concept that we needed to move faster or we couldn't move, it really belies everything that is in the record about what happened here. So we talk about this June 7th hearing of that's all secret and we didn't know. But then I think Mr. Trahant goes further and he says, well, that ordered show cause hearing was also improper because there was no evidence. And Your Honor, what that really boils down to when you think about it is that there are magic words that a court has to say of I offer, file, introduce into evidence, and then the court says it is admitted. That is not required under any reading of any law. What is, if that was the case, it would elevate form over substance to the highest degree, which is something this court and the Supreme Court have decried time and time again. In fact, we all just heard earlier, it doesn't matter what the title of the removal order is or return order or whatever the order was, it's the substance of what was done. So what was done here is the court, not under seal, not anywhere else, ordered the US trustee report to be given to Mr. Trahant after June 7th. Again, I will admit it's after June 7th, but again, June 7th was not an order sanctioning anybody. June 7th was, as Judge Ash said, simply protecting the order at that moment, enforcing it as she is entitled to do under 105A. A lot was made about 105A and how far she can go. She certainly can say, when I say she, I mean the bankruptcy judge. The bankruptcy judge has every authority and every right to issue orders to protect her jurisdiction and to protect and enforce her orders. But there's a second sentence to 105A that people tend to forget, and that says that the concept of notice and hearing elsewhere in the bankruptcy code shall not be construed to prevent a court from acting sua sponte. And that is what the court was doing. I assume that the protective order itself was a 105A order? It was either 105A or possibly, in getting to Judge Ramirez's question, a discovery order under 9014, which rule 9014 of the bankruptcy code, the bankruptcy rules, incorporates many possible procedures. So whether it was 105A, 9014, or other parts of it. I assume 9014 is really just, is a rule implementing the 105A statutory authority. Partially, yes. So are these orders, these kinds of protective orders, are these common in bankruptcy practice? In my experience, yes. What's the point of them? What is the... So the bankruptcy code itself has a couple of provisions. It has, first of all, section, I think, 107, that specifically talks about the need to keep matters under seal. Courts have looked at this numerous times as a way to kind of say it supplants the common law rule that says we want to be completely open for very specific reasons. The general genesis, my understanding of it is, and I'm not going to pretend to be an expert, is that there are many things that happen in a corporate bankruptcy context that really are trade secrets or true, like from a business standpoint, outside of the context of this case, true issues that you don't want to have everyone know. A private company is otherwise not subject to certain disclosure laws having to disclose certain things. Trade secrets, that sort of information, not secret contracts, but contracts with provisions that would otherwise be sealed or kept confidential. Just because someone filed bankruptcy, it would hurt the economics if you had to now disclose that. So is it... Would you... Can we go so far as to say that the general rule in bankruptcy is to have a protective order like this? I wouldn't say there's a general rule that there's a protective order. I think it needs to be gone in and talked about. We did talk about it because, again, at the very beginning of this case, we knew that this was going to involve what 107 calls scandalous and possibly defamatory information. And I'm not saying that anything that was in there is or is not that, but it's certainly information that is of a scandalous type nature. And in that sense, we all agreed, and that's the whole point, we all agreed to this. This was agreed to amongst all the parties, including the committee that Mr. Trahant was advising his clients on. So in that sense, this concept that it was imposed upon him is also a little... Just belies what actually happened. He agreed to it, or at least the committee that he is a part of agreed to it. The court entered it. He had every opportunity to object to it. He did not. So... And this was, by the way, numerous times do we have to come back and amend it and say, well, no, we wanted to do this, or we wanted to say additional things. This has not been a static document. This has not been a by-itself document. And it has been, however, what has governed, what has become a free flow of information from the debtor to the committee in order to investigate some serious allegations. But in that sense, and I will say this, Judge Oldham, with regards to bankruptcies in general, I wouldn't say a protective order is very common. With regards to mass tort bankruptcies, especially the Catholic Church ones, they are very common and happen in almost every one of them. So I want to get to the evidence issue because I think it's something that I was pulling myself of, and that's... There is no magic words that were needed. The U.S. trustee report, as we said, yes, it was filed, but it was still given to him before the order to show cause, and he, in fact, objected to it. He objected and said, under hearsay rules, it's hearsay. Court considered it. Court overruled the objection in her order, in her October order. It seems preposterous to argue now, after I objected to a piece of document, the court rules on that, that now say, oh, but it was never admitted into evidence. She took it under advisement, ruled on it, and went on and looked at it. Counsel, was Mr. Trahant's testimony at the show cause hearing sufficient to support a finding that he violated the protective order? It absolutely was, Your Honor, and that was actually where we were next. He absolutely... And that's what's sort of ironic about all of this. He admits exactly that he used confidential information, that he called the principal at the school, that he called a reporter, and moreover, that he knew, because of the nature of his work, he intended for them to take action based on that. He knew exactly what they were going to say. He testified to that at the show cause hearing, let alone in the U.S. trustee report, in the U.S. trustee depositions. Moreover, we keep hearing about the bills, that he never had any opportunity to see the bills were filed into the record. So this gets now to the first waiver part. He 100% could have and should have argued to the bankruptcy court that the amount of the bills were excessive, or it was incorrect, or whatever the amount was, or whatever he wanted to argue. They were all filed pursuant to the same court order that set the show cause hearing. They were all filed by that deadline into the record. Any argument that he is now making, or that he made in the district court and that he's now making before this court, Your Honor, is simply waived. Further, I implore you to go back and read the bankruptcy court order, as I know you all will. That order is very specific of using the Lodestar analysis that we use in bankruptcy courts and outside of bankruptcy courts to determine how much was put in. She made a factual finding that she believes the entries, that she believes they were related to this, and that they were reasonable and necessary. Those are the factual findings she made. That has never been questioned until we get to appeal. And for that reason alone, that is a significant issue that we need to put to bed. Your Honors, I think that the real crux of all of this is that we have an attorney who, I think Judge Richman, as you said, or as Mr. Durko was saying, was put in an untenable position. That's what he thought he wasn't. He had the ability to go to the court. He had the ability to come to us. This was a bunch of things he could have done. And instead of doing any of that and concealing and not coming forward and saying, when we asked the question, you want to go back to what's in the original record? We asked a question of the committee. There appears to be a leak. Can you say who it is? And what we got was, it's not one of us. And if you go back and look at the status conference transcripts that have now been unsealed, you can go back and look. Numerous times committee counsel would say to the judge, we don't know who it is. Numerous times until we get to April. Then we learned who it was. So, my point in kind of going through that is, this was not a situation in which he's jumping up and down and begging the court, let me just tell you what happened. This is a situation of violation of protective order that he admits was a violation of protective order. And it caused, we heard a little bit about the amounts. I don't want to talk about that because it was extraordinary. And the reason it was, was because it caused three law firms, because that's the other point. We keep hearing about the U.S. trustee and the debtor. Let's not forget both law firms for the committees, for the committee. They have hired Lock Lord. They have hired Piotrowski-Stang. It required three law firms and the U.S. trustee to spend hundreds of thousands of dollars and delayed significantly the progress of an already contentious bankruptcy. For that reason, Your Honor, we ask that you affirm the bankruptcy court sanction unless Your Honors have any further questions. Thank you. Briefly, Your Honors, to the last point, as of April 13, 2022, Mr. Trahan had in fact publicly declared what he did. And so to posit that from that point forward, three law firms had to bill $800,000 for a report that essentially parroted what he told everybody on April 13, Belize Logic. The fact of the matter is, is that the investigation was wholly unnecessary and it should have never happened. But it did. And it resulted in $400,000 in sanctions, which are clearly punitive by any objective measure. $400,000 for this, when it all could have ended, we posit, by the end of February, certainly by April 13th, is excessive and is, with all due respect, is an abuse of discretion. And on the point of evidence, with respect to counsel, I've been trying cases in the Eastern District for 37 years. And I've never had a trial or a hearing where I was excused from my obligation to properly offer introducing evidence into the record. And to argue that my objection to a document constitutes introduction of that document into a record is contrary to the rules of evidence, to the rules of civil procedure, and how we conduct trials. I don't have the burden of proof. Mr. Tran didn't have the burden of proof. Those documents were being offered by another party. Their burden is to properly offer them and explain why they're admissible under the federal evidence rules. Our burden is then to either say, you're right, they're in, or no, you're wrong, we need to have an adjudication by the trial judge, or whoever the judge may be, on whether these are admissible. That never happened here. And these bills are not even supported by affidavits or declarations, so why does Mr. Tran, as the party who may oppose the bills, have the burden of proof of doing so when they're never properly introduced into evidence? That's just, it's wrong under the rules, and it makes no sense to me as a lawyer who's tried a hundred cases in that courthouse, because it's procedurally and substantively the wrong position to take. And finally, Your Honors, I want to point out, it would have been very easy to have an evidentiary hearing well before the June 7 order issued. They filed a motion, Detter filed a motion, opposition, discovery time, evidentiary hearing, where both parties are there, represented by counsel, and evidence is properly put in the record, there's sworn testimony, and from that, the court makes the call. That is what we respectfully suggest should have done here. The failure to do it is contrary to what the UST found. They said they recommended a hearing in open court to address their report. They never found willful and intentional violations of a protective order, so there's no bad faith evidence in this investigation report. Mr. Tran never had the opportunity to traverse that. He never had the opportunity before he was accused of bad faith to get up and say, wait a minute, what's the evidence here? How am I guilty of bad faith that would cause me to get punished with a $400,000 sanction? Never afforded that opportunity. And in the end, the debtor on March 15th submitted a case called In Re Highland Capital for the because the judge in that case noted a potential due process problem with the proceeding and painstakingly detailed exactly what he did to make sure there was no due process problem. And that's exactly what should have been done here. And at the end of the day, had that been done, whether or not Mr. Tran was ultimately found guilty of a protective order violation, which we deny and absolutely deny that he admitted that, whether or not that would have been true, what absolutely would have been true is that $800,000 worth of lawyer time would not have been expended to get where we are today. Thank you very much. Counsel? I'm sorry, Your Honor. Is a court required to apply the rules of evidence during a discovery proceeding? During a discovery proceeding? Yes. No. No, the rules of evidence don't apply to a discovery proceeding, but once you take it to the next step, they absolutely, if a court, my appreciation, judges, if a court is going to issue an order and it bases an order on facts or documents or whatever that may be, those facts or documents have to be properly admitted in the evidence or they can't be considered, and they certainly can't be considered on appeal. That's the reason we have the evidence rules that we have, and that was not done here. Thank you. That will conclude the arguments today. The court stands recessed until 9 o'clock in the morning.